UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRUCE WATSON, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 1:19-CV-184-ACL |
| DORIS FALKENRATH,[1] | ) |
|       Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Bruce Watson for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Watson is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City, Missouri. (Doc. 7-2 at 51-54.)

On October 19, 2011, a jury found Watson guilty of first-degree robbery. *Id.* at 44. He was acquitted on an armed criminal action count. *Id.* at 43. The court sentenced Watson to fifteen years' imprisonment and ordered that the sentence run concurrently with Watson's previous federal sentence. *Id.* at 52.

In his single claim raised on direct appeal of his conviction, Watson argued that he was denied his right to a fair trial when the trial court overruled his objections to the State's closing

---

[1] The Court substitutes Doris Falkenrath, the Warden of the Jefferson City Correctional Center in Jefferson City, Missouri, where Petitioner is currently in custody, for the State of Missouri as the proper respondent in this matter. *See* Rule 2b of the Rules Governing Section 2254 Cases in the United States District Courts.

1

argument.  (Doc. 7-3 at 13.)  On April 23, 2013, the Missouri Court of Appeals affirmed Watson's conviction.  (Doc. 7-5.)

Watson filed an untimely *pro se* motion for post-conviction relief under Rule 29.15.  (Doc. 7-7 at 13-31.)  An amended post-conviction relief motion was filed by counsel.  *Id.* at 46-64.  Watson argued that trial counsel was ineffective in failing to request the submission of lesser-included offense instructions for robbery in the second degree and stealing.  *Id.*  The motion court denied the motion without an evidentiary hearing.  *Id.* at 4.  The Missouri Court of Appeals denied Watson's appeal, finding the *pro se* motion was untimely.  *Id.* at 6.  Watson's case was transferred to the Supreme Court of Missouri, which held that the untimely filing was excused by the trial court's incorrect advice about the filing deadline, and that Watson had alleged sufficient facts to warrant an evidentiary hearing on his claim of ineffective assistance of counsel.  *Id.*  The Court remanded to the motion court for an evidentiary hearing.  *Id.*  Watson's post-conviction motion was denied on February 22, 2018, after holding an evidentiary hearing.  *Id.* at 103-112.

In his appeal, Watson raised the same ineffective assistance of counsel claims.  (Doc. 7-8.)  On May 21, 2019, the Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 7-11.)

Watson filed the instant Petition on October 15, 2019, in which he raises a single ground for relief.  Watson argues that trial counsel was ineffective for failing to submit jury instructions for lesser included offenses.

Respondent argues that the Court should defer to the state court decision and deny Watson's Petition on the merits.

2

## II.  Facts[2]

Viewing the evidence in the light most favorable to the verdict, the record reveals that, on July 11, 2009, Watson took a cab to a check-cashing business and, upon arriving at the location, he ordered the cab driver to wait for him   The teller, Yelena Shull ("Shull"), was assisting a customer when she saw Watson enter the business.   Shull noticed that Watson began impatiently pacing back and forth behind the customer and asked Watson if she could help him.  Watson tossed a blue bag on the counter and responded, "no, but you can fill this up."   Watson then walked around the counter, reached into his pocket and flashed what Shull believed to be a gun, and told her to fill up the bag.   Believing that Watson was pointing a gun at her, she complied with his request and placed the money from the drawer into the bag.   Watson then requested that Shull open the safe.   Shull entered the code and explained that, because the safe had a 10-minute delay security feature, the safe would unlock itself 10 minutes after the code was entered.   Watson did not wait for the safe to open.   Watson left with the bag of money and got into the cab, where he sat for almost a minute.   Shull activated the silent alarm, wrote down the phone number of the cab company and the cab number, and called 9-1-1.

Shull gave a three-page written statement to the police.   At trial, she explained that she did not provide a description of the gun in her statement because she was only asked to describe the events that took place—not the weapon.   The police contacted the cab driver and he identified Watson from a physical lineup as the passenger he drove to the check-cashing business.   Shull identified Watson from a photo lineup and a physical lineup as the man who robbed the check-cashing business.

---

[2]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming the decision of the motion court.   (Doc. 7-11 at 2-6.)

Throughout the trial, Watson's counsel focused the jury's attention on the lack of proof that a gun was used during the commission of the robbery. During closing argument, trial counsel contended that Shull had made an "innocent mistake" when she reported that a weapon was used because the surveillance video showed that a gun was not used by the perpetrator. Trial counsel then directed the jury to the elements of first-degree robbery and stated:

> The fourth element is the one you cannot find. Fourth, that in the course of taking the property, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument. Someone has to see something that appears to be a deadly weapon or a dangerous instrument, and that possibility's refuted by clear and convincing, unmistakable videotape evidence. Human observation is prone to assumption and mistakes. The videotape is not. It is the most reliable piece of evidence you have. And it clearly refutes the State's case. The defendant never displayed what appeared to be a deadly—or threatened the use of what appeared to be [a deadly weapon]. There has to be something displayed that appears to be a deadly weapon or dangerous instrument.

Defense counsel did not submit instructions for any lesser-included offenses. The jury found Watson guilty of robbery in the first degree, but acquitted him on the armed criminal action count.

### III.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to

4

be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### IV.  Petitioner's Claim

Watson argues that trial counsel was ineffective for failing to submit jury instructions for lesser included offenses.

The Sixth Amendment grants a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To obtain reversal of a conviction for ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. "[C]ounsel's representation" is deficient if it "[falls] below an objective standard of

reasonableness." *Id.* at 688. Because "[t]here are countless ways to provide effective assistance," a court must presume that counsel's conduct is reasonable, and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). A deficient performance prejudices a defendant where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This probability must be "sufficient to undermine confidence in the outcome" of the case. *Id.*

Because § 2254(d) mandates reversal of a state-court rejection of post-conviction relief only when the state-court ruling was itself an unreasonable application of clearly established federal law, ineffective-assistance-of-counsel claims under § 2254 are reviewed under a "doubly deferential" standard. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Under that standard, the Court "take[s] a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Id.* (first quoting *Strickland*, 466 U.S. at 689; and then quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 (2009)). In other words, "[Watson] must demonstrate that it was *necessarily* unreasonable for the [Missouri Court of Appeals] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's [verdict]." *Id.* (emphasis added).

"The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles*, 556 U.S. at 123). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* With this

guidance in mind, the Court addresses Watson's claim that counsel should have submitted lesser-included offense instructions for second-degree robbery or stealing.

At the evidentiary hearing held before the motion court, counsel testified that his strategy was to pursue a "straight acquittal" because of Watson's claim that "it wasn't him" who committed the robbery and because the surveillance video clearly showed that the individual committing the offense did not have a gun.  (Doc. 7-6 at 14.)  Counsel further testified that he was concerned about submitting an instruction for stealing because he was afraid that the trial court would run that sentence "consecutive to his Federal time" for a prior "Federal bank robbery" conviction.  *Id.* at 15.  He also indicated that he was concerned that if he requested a misdemeanor stealing instruction, the State would then request an instruction for robbery in the second degree, which carried a significant length of imprisonment.  *Id.*

During his closing argument, defense counsel conceded that the State "probably did a great job of proving the first three elements—or the first two elements, that the defendant was somehow involved."  (Doc. 7-1 at 92.)  He argued that the evidence presented by the state "shows the defendant absolutely did not commit element four and is therefore innocent," because Watson never displayed what appeared to be a deadly weapon or threatened the use of a deadly weapon.  *Id.*

The Missouri Court of Appeals denied Watson's claim, finding that counsel was not ineffective for declining to submit lesser-included offense instructions, because counsel's choice was part of a trial strategy aimed at convincing the jury to acquit Watson of first-degree robbery.  (Doc. 7-11 at 11.)  The Court stated:

> The evidentiary hearing record supports that trial counsel's decision not to request the lesser-included instructions was part of an 'all-or-nothing' defense trial strategy, and the record demonstrates that it was reasonable trial strategy to ask the jury for an outright acquittal over a conviction for a lesser-included offense.  [citation omitted]   Thus, Movant is unable to show that trial counsel

7

>was ineffective for failing to request instructions for the lesser-included offenses of second-degree robbery and stealing. Because Movant has failed to satisfy the first prong of the *Strickland* test that trial counsel's performance was deficient, we need not analyze the prejudice prong.

*Id.* at 12.

The Missouri Court of Appeals properly applied *Strickland*. It was reasonable for the Court to conclude that Watson's trial counsel's "all-or-nothing" strategy was not deficient. As noted above, the Court must review Watson's § 2254 ineffective-assistance claim under a "doubly deferential" standard. *Cullen*, 563 U.S. at 190. Further, deciding whether to seek a lesser-included offense instruction is generally a strategic decision requiring even experienced counsel to make difficult judgment calls. *See, e.g.*, *Driscoll v. Delo*, 71 F.3d 701, 715 (8th Cir. 1995); *Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997); *Riley v. Lockhart*, 726 F.2d 421, 423 (8th Cir. 1984). Watson has failed to overcome the presumptions regarding his counsel's performance, or shown that the Missouri Court of Appeals' performance-prong finding was necessarily an unreasonable application of *Strickland*.

Accordingly, the Petition is denied.

**V.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. §2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Watson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable

jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

**ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

Dated this 23rd day of March, 2023.

                                                    s/*Abbie Crites-Leoni*
                                                    ABBIE CRITES-LEONI
                                                    UNITED STATES MAGISTRATE JUDGE